CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 11, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **CHAD ALLEN GARRETT** | ) | Case No. 7:24-cv-407 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Hon. Robert S. Ballou |
| | ) | United States District Judge |
| **LT. STEVEN GULLETT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Chad Allen Garrett, a Virginia inmate acting *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging that Lt. Steven Gullett violated his constitutional rights by preventing him from accessing religious materials. Dkt. 1 at 2, 4; Dkt. 17 at 1. Gullett filed a Motion to Dismiss for failure to state a claim. Dkt. 20.

I find that Garrett alleged sufficient facts to support a claim that the defendant violated his First Amendment right to information, but has failed to state a claim for a violation of his First Amendment right to the free exercise of religion, and therefore **GRANT in part and DENY in part** Gullett's Motion to Dismiss.

**I.     Standard of Review**

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[C]ourts are obligated to liberally construe *pro se* complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017). Liberal construction is particularly important when *pro se* complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021).

## II.    Facts

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts do not have to accept legal conclusions or conclusory statements as true. *Iqbal*, 556 U.S. at 678. Construing the Complaint in this manner, Garrett alleges the following facts giving rise to his claims.[1]

During the relevant events, Garrett was incarcerated at the Southwest Virginia Regional Jail, Duffield Facility (the "jail").[2] Dkt. 1 at 1. Garrett is a member of the Temple of Satan. *Id.* at 4. On September 22, 2022, Garrett asked whether he could have religious materials sent to the jail. Dkt. 17 at 9. Gullett responded that he could have them so long as they were sent directly from the publisher, were not a security threat, and were not hard cover books. *Id.* On September

---

[1] Garrett filed three sets of his communications with the jail in support of his allegations. Dkt. 17, 19, and 24. I view these documents as if they were attached to and incorporated into the Complaint. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

[2] It is unclear whether Garrett was detained as a convicted inmate or as a pretrial detainee; however, the standard for First Amendment violations is the same. *See Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993) ("We therefore apply the same legal standard for detainees as for convicted inmates with due regard for the particular circumstances of pretrial detainment.").

23, 2022, Garrett requested the address of the church of Satan, which Chaplain Adams (who is not a party in this suit) provided. *Id.* at 2. On September 28, 2022, Garrett notified the jail that the books he requested were en route to the jail; the jail responded that Gullett would review the books when they arrived. *Id.* at 3. Garrett alleges that on September 30, 2022, Amazon notified him that his book was arriving the next day. Dkt. 24 at 3. Indeed, the jail received the book on October 1, 2022. Dkt. 17 at 4. On October 2, 2022, Garrett requested his bible, saying that it had been delivered the prior day and the jail responded that "items received are processed and delivered per policy." *Id.* at 5. Garrett alleges that the jail, per Gullett's orders, returned the bible to Amazon. Dkt. 1 at 4.[3] On October 24, 2022, Garrett asked whether the jail had a list of banned books, and the jail forwarded this request to Gullett. Dkt. 17 at 7. It is unclear whether Garrett received a list of banned books. Garrett alleges that on November 3, 2022, he notified Gullett that he had ordered another book, and the jail responded that the book would be reviewed when received. *Id.* at 10. Garrett alleges that Gullett returned this book as well. Dkt. 1 at 4.

    About a year and a half later, on April 6, 2024, Garrett notified Gullett that he had more books en route to the jail, to which the jail again responded that "upon receipt and processing you will be notified the status of any items received[.]" Dkt. 17 at 8. Garrett alleges that these books were also returned. Dkt. 1 at 4. On April 29, 2024, Garrett requested a Douay Bible; the jail responded that they did not have that book, but that Garrett could order it from the publisher.

---

[3] Garrett alleges that "when [he] ordered the satanic bible it was sent back to amazon an[d] [he] was told it hadn't came there[,] . . . Gullett denied sending them back [but] . . . it had been sent back anytime[.]" Dkt. 1 at 4. The documents incorporated into the Complaint also allege that Garrett would review items received in the mail and would give them to inmates so long as they did not violate the jail's policies. Dkt. 17 at 2–3, 9–10; Dkt. 19 at 3. I understand Garrett to allege that whenever he had a satanic bible delivered to the jail, the bible was returned per Gullett's orders.

Dkt. 19 at 3. It is unclear whether Garrett ever ordered this book. On May 31, 2024, Garrett sent a request for "which directions are north south etc" so that he could do his rituals and prayers. Dkt. 24 at 2. The jail responded that Lt. Templeton informed Garret of the cardinal directions from his housing unit. *Id.* On June 5, 2024, Garrett asked how he could have a member of the Temple of Satan perform a ritual at the jail. Dkt. 19 at 2. The jail responded the next day, saying that a person wishing to perform such a ritual would need to fill out an application. *Id.*

### III.     Analysis

Garrett alleges that Gullett violated his constitutional rights by denying him access to religious materials. Dkt. 1 at 2. I liberally construe this as an allegation that Gullett violated Garrett's First Amendment free exercise rights and Garrett's First Amendment rights to receive information and ideas. While Garrett did not allege sufficient facts to support a violation of his free exercise rights, he did allege sufficient facts to make a plausible allegation of a violation of his right to receive information.

Federal courts recognize that running a prison is "an inordinately difficult undertaking" which requires courts to give deference to the prison officials who are charged with effecting penological interests such as security and discipline while recognizing that inmates maintain certain constitutional rights while incarcerated. *Turner v. Safley,* 482 U.S. 78, 84–85 (1987); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349–50 (1987). In light of that deference, courts apply a relatively unrestrictive reasonableness test to penological policies which may infringe on certain rights, determining that prison policies that abridge inmates' constitutional rights can be valid so long as they are "reasonably related to legitimate penological interests." *O'Lone,* 482 U.S. at 349; *Turner,* 482 U.S. at 89.

### a. Garrett Did Not Allege a Violation of His First Amendment Free Exercise Rights.[4]

Under the Free Exercise Clause of the First Amendment, prison officials must reasonably accommodate an inmate's exercise of his sincerely held religious beliefs. *O'Lone*, 482 U.S. at 350. Garrett brought a § 1983 claim against Gullett, liberally construed to allege that Gullett violated his First Amendment rights by preventing him from accessing religious materials. The Fourth Circuit uses a two-pronged threshold inquiry and a four-factor test to determine whether a prison regulation unreasonably violates an inmate's First Amendment free exercise rights. *Firewalker-Fields v. Lee*, 58 F.4th 104, 114–15 (4th Cir. 2023). For the threshold inquiry, an inmate must show (1) that he holds a sincere religious belief and (2) that the challenged policy or practice substantially burdens his religious practice. *Id.* at 114. Upon satisfying the threshold inquiry, the burden shifts to the defendant to establish that the policy is reasonably related to valid penological interests. *Turner*, 482 U.S. at 89. The court determines whether a regulation is unreasonable by examining (1) whether there is a rational connection between the jail regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means open for the inmate to exercise the right; (3) the impact an accommodation of the asserted constitutional right will have on guards, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives. *Id.* at 115.

Garrett adequately alleges that he holds sincere religious beliefs as a practicing Satanist, satisfying the first prong of the threshold showing. Dkt. 1 at 4. However, he fails to allege sufficient facts supporting the second prong of the threshold showing, as he does not allege that

---

[4] I analyze Garrett's complaint under the First Amendment and do not address any potential claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because Garrett seeks monetary damages and RLUIPA provides only equitable relief. *Burke v. Clarke*, 842 Fed. Appx. 828, 836 (4th Cir. Jan. 14, 2021).

the prison substantially burdened his religious practice. Because Garrett does not allege sufficient facts to make a threshold showing that Gullett's actions created a substantial burden on his First Amendment right to practice his religion, this claim is dismissed. And, because Garrett's claim fails on the threshold inquiry, I do not address the reasonableness of the prison regulation or policy in determining whether Garrett alleged a violation of his free exercise rights.

Prisons substantially burden inmates' religious practice when they pressure the inmate to "modify his behavior and violate his beliefs," *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 718 (1981), when they pressure an inmate to change his religious beliefs, or when they force an inmate to choose between abandoning his religion or following his beliefs and losing some government benefit. *Firewalker-Fields*, 58 F.4th at 114. The fact that Gullett returned the religious books Garrett ordered does not, standing alone, adequately allege a substantial burden on Garrett's ability to practice his chosen religion. The complaint contains no allegations that Gullet pressured Garrett to change his beliefs, that Gullett pressured him to modify his behavior in a way that violated his beliefs, or that Garrett risked losing any privileges or other benefits because of his religious beliefs. Rather, Garrett alleges that he was still able to practice his religion—the jail informed him of the cardinal directions so he could perform his rituals and prayers, the jail informed him of the application process necessary to have a member of the Temple of Satan perform a ritual at the prison, and the jail informed him of the procedure he should use to access religious materials. Dkt. 17 at 9; Dkt. 19 at 2–3; Dkt. 24 at 2. "No actionable burden occurs if the official action merely makes the religious exercise more expensive or difficult, but does not pressure the adherent to violate his or her religious beliefs or abandon one of the precepts of his or her religion." *Peyton v. Walrath*, No. 7:16CV00294, 2017 WL 4294216, at *7 (W.D. Va. Sept. 27, 2017) (internal quotations omitted). Garrett's allegation—that he was

6

denied access to certain religious books but was still able to practice his religion—does not rise to the level of substantial burden that the Fourth Circuit requires for a claim to survive a motion to dismiss.

The Fourth Circuit recently held that an inmate's allegations of a complete denial of his ability to participate in a central, mandatory practice of his religion was a substantial burden because it forced the inmate to violate the requirements of his religion. *Hammock v. Watts*, No. 24-6375, 2025 WL 2054852, at *1–2, 8–10 (4th Cir. July 24, 2025). Garrett does not claim that because he did not have the books Gullett returned, he violated any requirement of his religion. Further, courts in this circuit have found that, even when a plaintiff claims that certain religious books are necessary to their religious practice, limiting access to those books does not necessarily constitute a substantial burden. *See, e.g.*, *Baisi v. Bleavins*, No. CV 3:24-00162, 2024 WL 5515550, at *11 (S.D.W. Va. Nov. 25, 2024) (listing cases where limitations on inmates' access to religious books was not considered a substantial burden on the inmates' religious practices).

Denial of a religious text, without more to show that the denial hinders an inmate's ability to practice his religion, does not constitute a substantial burden. Garrett does not allege that he was pressured to change his beliefs or modify his behavior, or threatened with losing a privilege or other benefit because of his religious beliefs, he has not alleged that Gullett's conduct imposed a substantial burden on his ability to exercise his religion – a necessary element to withstand a threshold inquiry of a First Amendment free exercise claim. For those reasons, this claim is dismissed.

### b. Garrett Adequately Alleged a Violation of His First Amendment Right to Receive Information and Ideas.

Garrett has adequately alleged that Gullett violated his First Amendment right to receive information and ideas. Prisons infringe upon an inmate's First Amendment right to receive information and ideas when they prevent an inmate from accessing information, such as books, unless the restriction is reasonably related to legitimate penological interests. *Turner*, 482 U.S. at 89. To determine whether a policy is rationally related to a legitimate penological interest, courts use the same four-factor reasonableness inquiry described used in free exercise claims. *Id.*; *see also Hum. Rts. Def. Ctr. v. Sw. Virginia Reg'l Jail Auth.*, 396 F. Supp. 3d 607, 618 (W.D. Va. 2019) (applying the *Turner* factors to an alleged violation of an inmate's right to receive information). But, unlike allegations of violations of free exercise rights, allegations of violations of inmates' right to receive information do not require a threshold inquiry.

In assessing the reasonableness of the policy, courts examine (1) whether there is a rational connection between the jail regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means open for the inmate to exercise the right; (3) the impact an accommodation of the asserted constitutional right may have on guards, other inmates, and the allocation of prison resources generally; and (4) whether there are ready alternatives. *Turner*, 482 U.S. at 89–91. A prison regulation does not need to be the least restrictive method to further the government interest, but "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable" *Id.* at 90. The *Turner* court noted that, for allegations of First Amendment violations it is "important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion, without regard to the content of the expression." *Id.*

Garrett alleges that he ordered religious books at least twice, and Gullett returned the books to the shipper each time because of the content. Dkt. 1 at 4; Dkt. 17 at 3–5, 8–10; Dkt. 19 at 3–4; Dkt. 24 at 1, 3, 8–9. Garrett alleges that he ordered the books in compliance with the jail's requirements (that books must be soft cover and shipped directly from the publisher), but that the jail denied him access to his books because of the content of the books, rather than because of non-compliance with the jail's policies. *Id.*

A jail cannot restrict an inmate's right to receive information and ideas, even disfavored ideas, unless those restrictions are related to penological interests. *Pruitt v. Rockingham Harrisonburg Reg'l Jail*, No. 7:05 CV 00560, 2005 WL 2563031, at *1 (W.D. Va. Oct. 11, 2005). At the 12(b)(6) stage, taking the facts in the light most favorable to the plaintiff, Garrett alleges that Gullet denied his access to religious books, which is a violation of his First Amendment right to receive information. *See Stephens v. Cnty. of Albemarle*, 524 F.3d 485, 491 (4th Cir. 2008) ("To be sure, it is now well established that the Constitution protects the right to receive information and ideas from a willing speaker.") (internal quotations omitted). Gullett notes that some courts have found prison policies forbidding inmates from accessing satanic bibles to be rationally related to penological safety. *See, e.g., McCorkle v. Johnson*, 881 F.2d 993 (11th Cir. 1989). But, at the motion to dismiss stage, the court will consider only the well-pled allegations in the complaint and construe those allegations in a light most favorable to plaintiff.[5] *Mylan Labs. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Gullett argues that Garrett did not allege any "policy or practice at the SWVRJA that forbids the possession of some particular satanic book[.]" Dkt. 20 at 5. However, this overlooks Garrett's allegations that Gullett repeatedly

---

[5] In liberally construing the *pro se* allegations, the Court has permitted the additional evidence provided by Garrett to be considered part of the Complaint.

9

denied his access to satanic books he ordered; allegations which could support a reasonable inference that the jail had a practice which forbid Garrett from possessing those books.

At this stage, taking the facts in the light most favorable to Garrett and liberally construing Garrett's allegations, Garrett alleges that at least twice, he ordered religious books while complying with the jail's stated policies, and Gullett prevented Garrett from receiving those books. These facts are sufficient to support an allegation of a violation of Garrett's First Amendment right to receive information and ideas.

### IV.     Conclusion

Because Garrett has not alleged that the denial of access to the books substantially burdened his religious practice, I **DISMISS WITHOUT PREJUDICE** his free exercise claim. I **DENY** the motion to dismiss the First Amendment claim to the extent that Garrett asserts a right to receive information and ideas. The Clerk is directed to set this matter for trial. Thereafter, the court will enter a pretrial order which will give the parties sufficient time to complete any discovery and file any additional dispositive motions. An appropriate Order accompanies this Memorandum Opinion.

Entered:  September 11, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge